UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WINSTON K. MCKESSON

VERSUS

DR. BRENDIA FORD

CIVIL ACTION

NO. 10-194-BAJ-SCR

## RULING

This matter is before the Court on a motion for summary judgment by plaintiff, Winston K. McKesson, ("Plaintiff") (doc. 26). Pro se defendant, Dr. Brendia Ford ("Defendant" or "Dr. Ford"), has not opposed the motion. Jurisdiction is based on 28 U.S.C. §1332.

## BACKGROUND

Pursuant to LR 56.1, Plaintiff has submitted a statement of undisputed material facts (doc. 26-9). Defendant, however, has not contested those facts as required by LR 56.2. Therefore, pursuant to LR 56.2, Plaintiff's statement of uncontested material facts will be deemed admitted for purposes of this motion.[1] Those material facts are as follows:

1. Plaintiff is an attorney at law, admitted to practice in the State of California, and has been practicing law since 1982. (Ex. 1, ¶3). Plaintiff is, and at all

---

[1] LR 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

times relevant to this action has been, a resident of Los Angeles, California. (Ex. 1, ¶4).[2]

2. On May 3, 2007, Defendant, as guarantor, and DeAnthony Ford ("Mr. Ford"), as client, entered into a written Attorney Retainer Agreement (the "Agreement") with Plaintiff, in which Defendant and Mr. Ford promised to pay Plaintiff $700,000.00 to represent Mr. Ford in connection with the charges of second degree murder and attempted second degree murder. (Ex. 1, ¶10). The Agreement provided that Plaintiff would represent Mr. Ford in connection with the jury trial, or any acceptable disposition prior thereto, of the charges then pending against him. (Ex. 2). On August 17, 2007, Defendant executed a secured promissory note in the amount of $700,000.00, payable to the order of Plaintiff, with interest at 5% per year to secure the payment of attorney's fees to Plaintiff as Defendant and Mr. Ford had agreed in the May 23, 2007 Agreement. (Ex. 1, ¶11; ex. 3; Promissory Note). The promissory note also provided for the payment of reasonable attorneys' fees and all costs, expenses and disbursements in connection with a collection action, if necessary (Ex. 3). Defendant signed the promissory note in the presence of Plaintiff (Ex. 1, ¶11). Plaintiff is the holder of the August 17, 2007 promissory note. No payments have ever been made on the note. (Ex. 1, ¶12).

3. On November 5, 2007, the Board of Trustees of the James A. Ford-William Bradford Ford Foundation sent a letter to Plaintiff. The letter is signed by a number of board members and beneficiaries of that foundation. Dr. Ford signed the letter as "Trustee/Heir." The letter states with respect to Plaintiff's representation of Mr. Ford, in pertinent part:

> The trustees agreed that the excellent performance of Mr. McKesson and the fact that he worked with the Ford family even though their financial situation was then under Internal Revenue Service scrutiny deserves a prompt payment of fees as soon as the disbursement funds are available. There are no words to express our gratitude for your wait to assist our family. The Ford family will retain Mr. McKesson's payment in full to be a part of this Foundation and Trust.

(Ex. 4; Ex. 1, ¶13).

---

[2] Plaintiff alleges that he has a Martindale-Hubbell rating of AV. He has been included in the history of Southern California Super Lawyers annually since 2004. He was listed as one of the fifteen most influential black lawyers in the United States by Savoy Magazine in 2003. (Ex. 1, ¶18).

4. Between May 23, 2007, and November 18, 2009, Plaintiff represented Mr. Ford in defense of criminal charges of second degree murder and attempted second degree murder brought against Mr. Ford in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, and the trial and appeals in connection with those charges. (Ex. 1, ¶5; doc. 4, ¶5).[3]

5. Defendant has no evidence that Plaintiff failed to fully and competently perform the legal services he contracted to perform in the May 23, 2007 Attorney Retainer Agreement. (Ex. 1, ¶18).

In her answer to Plaintiff's complaint, Dr. Ford alleges that Mr. Ford "did not have representation by Mr. Plaintiff as agreed upon." (Doc. 4, ¶6). Defendant further alleges that her son "agreed to $350,000 for cost and if he was exonerated, it would cost $700,000 per his Trust." (*Id*). The "Attorney Retainer Agreement" (doc. 26-3), signed by both Plaintiff and Defendant on May 23, 2007, and by Mr. Ford on August 14, 2007, states in pertinent part:

> It is hereby understood and agreed that the Firm is being retained under the following terms:
>
> a) The non-refundable retainer is to ensure attorneys' availability. It is deemed earned when received: <u>$50,000.00</u>

---

[3] Plaintiff alleges that he represented Mr. Ford in a five-day jury trial on the charges of second degree murder and attempted second degree murder, preceded by extensive investigation and pre-trial motion practice. Plaintiff was assisted in the trial by his associate attorney, Gary Austin. (Ex. 1, ¶6). After the conviction, Plaintiff pursued a motion for new trial on behalf of Mr. Ford. The Motion for New Trial was denied. (Ex. 1, ¶7). Thereafter, on behalf of Mr. Ford, Plaintiff filed an appeal before the Louisiana First Circuit Court of Appeal and extensively briefed the matter. The Court of Appeal affirmed Mr. Ford's conviction in an unreported decision. *State v. Ford*, 2008-655 (La. App. 1 Cir. 11/14/08), 2008 WL4908685, 996 So.2d 701 (Table). (Ex. 1, ¶8). Thereafter, on behalf of Ford, Plaintiff filed an application for supervisory writs with the Louisiana Supreme Court, seeking to have that court review the case and reverse Mr. Ford's conviction. The Louisiana Supreme Court denied the application for supervisory writs on September 18, 2009. *State v. Ford*, 2008-K-2983 (La. 9/18/09), 17 So.2d 385. (Ex. 1, ¶9).

3

> b) To handle one ***Jury Trial*** or any acceptable disposition prior thereto: $650,000.00
>
> c) *"I had offered to handle the matter for $350,000.00 with an immediate $50,000.00 payment. You responded that your money was tied up for 10-14 days. To which I stated, that I will come to Baton Rogue [sic] and trusted you. In response, you stated that you would pay double my fee, since I put my trust in you."*

(Doc. 26-3, p. 1) (emphasis in original). Defendant avers that Plaintiff received "funds and collateral [from an alleged Trust] until the Internal Revenue Service (IRS) could be paid to remove a lien" (doc. 4, ¶9). In a letter dated October 15, 2007, from Plaintiff to Defendant, Plaintiff noted that:

> after receipt of the agreed upon fee of ***$700,000.00***, we will destroy any lien documents we have regarding any of your property or oil wells.
>
> *Finally*, please note we have not recorded any such lien to date.

(doc. 27, p. 3) (emphasis in original). Defendant further alleges that Plaintiff "failed to provide the services as stipulated in the Agreement" and "[t]he charge of $787,500 is without merit since the client did not receive the services" (doc. 4, ¶10).

The promissory note at issue matured on August 15, 2007, and Plaintiff filed suit on March 25, 2010. The promissory note has a California choice-of-law provision, stating in pertinent part that "all questions relating to its validity, interpretation, performance, and enforcement shall be governed and construed in

accordance with the laws of the State of California." (Doc. 26-4, p. 2).[4] As Plaintiff is the holder of the promissory note executed by defendant for $700,000.00, Plaintiff argues that he is entitled to judgment against Defendant in that amount; interest at 5% per annum from August 17, 2007 until judgment is rendered in this case; post-judgment interest as allowed by law until he is paid; and reasonable attorneys' fees and costs incurred in connection with this action (doc. 26-1, p. 4).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (quoting Fed.R.Civ.P. 56(c)). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986).

---

[4] The Court notes that Plaintiff analyzed the validity of the promissory note in his motion for summary judgment under Louisiana law (doc. 26-1, p.5).

After a review of the record, the Court finds that although Plaintiff has met his burden of setting forth sufficient evidence to show that there is not a genuine dispute of material fact; the Court notes, however, that Defendant is proceeding pro se and may be unaware that, in opposing the present motion for summary judgment, she bears the burden of setting forth evidence, including but not limited to affidavits or depositions, and a statement of material facts to controvert Plaintiff's statement of undisputed material facts. Accordingly, in the interest of justice, the Court shall extend the deadline for Defendant to oppose the motion for summary judgment.

## CONCLUSION

For the foregoing reasons the Court defers ruling on Plaintiff's motion for summary judgment (doc. 26) to allow Defendant time to sufficiently oppose the motion, if she chooses to do so.

**IT IS HEREBY ORDERED** that Defendant shall have ten days from the filing of this order in which to set forth evidence to meet her burden in opposing Plaintiff's motion for summary judgment.

Baton Rouge, Louisiana, November *10*, 2011.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA